IN THE UNITED STATES DISTRICT COURT, DISTRICT OF KANSAS

| | | | |
|---|---|---|---|
| GALICANO ALEA | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| | ) | Case No. | 6:24-cv-1147 |
| VS. | ) | | |
| | ) | | |
| SCOTT PTACEK, JULIAN GARCIA, and | ) | | |
| THE CITY OF GARDEN CITY, KANSAS | ) | | |
| | ) | | |
| Defendants. | ) | | |

## COMPLAINT

COMES NOW, Galicano Alea, by and through his attorney, Joseph T. Welsh, and makes complaint against School Resource Officer Scott Ptacek, Officer Julian Garcia and the City of Garden City, Kansas, for violation of his constitutional rights under the color of state law. In support thereof, Galicano Alea states to the Court the following:

## PARTIES, JURISDICTION AND VENUE

1.     Galicano Alea ("Galicano") is a resident of Finney County, Kansas and resides within the City of Garden City, Kansas.

2.     City of Garden City, Kansas ("City") is and was at all times relevant hereto, a municipal corporation within the State of Kansas.

3.     School Resource Officer Scott Ptacek ("SRO Ptacek") is a police officer employed by the City, and upon good faith and belief is a resident of the State of Kansas.

4.     Officer Julian Garcia ("Officer Garcia") is a police officer employed by the City, and upon good faith and belief is a resident of the State of Kansas.

5.     The Court has federal subject matter jurisdiction over this matter pursuant to 42 U.S.C. § 1983.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 as all of the acts giving rise to the claims set forth in this Complaint occurred in Finney County, Kansas.

7.      There is no requirement under federal law requiring Galicano to exhaust any administrative remedies prior to filing a complaint alleging 1983 claims.

## FACTS

8.      Galicano and his wife live on Olive Street, which is adjacent to, and immediately south of Horace Good Middle School located in Garden City, Kansas.

9.      Every day for years, Galicano has gone for a walk in the morning on public streets, sidewalks and trails.

10.     After completing the walk, Galicano returns home and at variable times thereafter takes his dog for a walk on public streets, sidewalks and trails.

11.     The walk Galicano takes for the benefit of his dog, oftentimes involves walking on public sidewalks that abut Horace Good Middle School.

12.     Galicano usually listens to music, podcasts or recorded books while he walks the dog.  Galicano has a hearing impairment that requires him to use hearing aids.  As a result of the use of hearing aids, Galicano has an elevated speaking volume.

### *Galicano's First Encounter with City police*

13.     On August 24, 2023, Galicano took his dog out for a walk at approximately 7:30 a.m.

14.     Galicano was on a public sidewalk abutting Edwards Street walking west with his dog when Officer Garcia first saw Galicano and thought that Galicano was possible taking pictures of children.

15.     Officer Garcia parked his vehicle near where Galicano was, exited his vehicle and began walking towards Galicano.

16.     Galicano, stopped walking when he realized that Officer Garcia was approaching him.

17.     Officer Garcia introduced himself as a police officer and informed Galicano that he was stopping him, because "it looked like you were taking pictures of the kids."

18.     Galicano denied that he was taking pictures of kids and thought the reason for the stop was "stupid."

19.     Officer Garcia again reiterated that "it looked like you had your phone out and were taking pictures of the kids."

20.     Galicano offered to let Officer Garcia see his phone so he could review the pictures that Galicano had on his phone.

21.     Officer Garcia requested Galicano's name.

22.     Galicano refused to provide his name.

23.     Officer Garcia again requested Galicano's name.

24.     Galicano advised Officer Garcia that "you don't need my name."

25.     Officer Garcia advised Galicano that if he suspected Galicano of a crime he could stop Galicano.

26.     Galicano interrupted Officer Garcia to inform Officer Garcia that suspicion of criminal activity was not a crime.

27.     Officer Garcia replied that "suspicious activity is a crime."

28.     Upon information and good faith belief, Galicano believes that Officer Garcia then called for backup.

29.     Galicano, exasperated, informed Officer Garcia that "this is ridiculous. I didn't take a picture of them."

30.     Concerned about what was transpiring, Galicano attempted to start recording the interaction between himself and Officer Garcia.

31.     Officer Garcia upon seeing that Galicano was attempting to record the interaction, advised Galicano "That's fine.  You can record all you want, sir."

32.     Officer Garcia then stated that he saw Galicano facing the kids, that Galicano turned around as the kids walked by, that Galicano had his phone up, and while Officer Garcia did not know what Galicano was doing, Officer Garcia believed he had reasonable suspicion to stop Galicano to find out what Galicano was doing.

33.     Galicano told Officer Garcia "This is not a crime."

34.     Officer Garcia advised that "What I'm seeing right now it gives me enough to stop and talk to you and ask what is going on."

35.     Galicano retorted "You can ask."

4

36.    Officer Garcia then told Galicano that under Kansas state statute Officer Garcia could ask for his name and his address when he stopped him.

37.    At that point, Galicano took issue with Officer Garcia's insinuation that Galicano must give Officer Garcia his name.  Galicano interrupted Officer Garcia and advised "My name? No.  That's illegal."

38.    Officer Garcia interrupted Galicano and told Galicano that inquiring of Galicano's name was not illegal or unlawful.

39.    Galicano removed his ear buds and advised Officer Garcia to go ahead and ask his questions.

40.    Officer Garcia again advised that he was entitled to stop Galicano when he had reasonable suspicion, and that he may ask Galicano for his name, his address, and what he is doing.

41.    Officer Garcia up to this point, and at no point thereafter, ever articulated to Galicano what crime Officer Garcia believed he had reasonable suspicion was being committed that allowed him to stop Galicano in the first instance.

42.    Galicano advised Officer Garcia that he was not giving his name to Officer Garcia and that he did not bring his identification with him.

43.    Galicano then requested the opportunity to explain himself.  Officer Garcia advised that would allow Galicano to explain himself.

44.    Galicano advised Officer Garcia that Officer Garcia probably saw Galicano before, walking in the morning, because he goes for a walk every morning around 6 o'clock, and

listens to his music, that when he gets home, he gets the dog and they go for a walk around the school building.

45.     Officer Garcia again reiterated what he saw, without articulating what crime had been committed, advised Galicano that he was asking for three (3) things, and again queried Galicano for his name.

46.     Galicano advised that he was not giving his name or address, but that he lived very close by.

47.     Sergeant Matt Cole (Sergeant Cole), the backup unit that Galicano believes Officer Garcia requested, then stepped into the conversation.

48.     At this point, there were 3 police cruisers parked around Galicano and 3 police officers positioned in a triangular position around Galicano.  Galicano was seized.as the term is used under the 4th Amendment.

49.     Sergeant Cole advised Galicano that Officer Garcia stopped him for a valid reason, and that Officer Garcia was looking to determine what was going on.

50.     Galicano advised the police officers that while he was not taking pictures of children, if he was taking pictures, he was on a public sidewalk, in a public place, and it was not illegal to take pictures of anything occurring in public.

51.     Sergeant Cole then told Galicano that he was free to go.  As Galicano was leaving the scene, Sergeant Cole opined to Officer Garcia that Galicano was a "jackass."

52.     After the interaction ended, and Galicano had been advised that he could go, Officer Garcia muted his body cam while he and Sergeant Cole were having a conversation

about Galicano.  Galicano believes that Officer Garcia muted the body cam because these two police officers wanted to denigrate Galicano, but did not want the conversation of them doing so recorded.

53.     Officer Garcia never entered his car or left the scene.

### *Galicano's Second Encounter with City police*

54.     Approximately three and a half minutes later, SRO Ptacek stopped Galicano, which was the second time the Garden City police seized Galicano.

55.     Galicano inquired if SRO Ptacek's body cam was on, to which SRO Ptacek advised Galicano that his body cam was on.  Galicano inquired of SRO Ptacek what his badge number was, which SRO Ptacek gave to Galicano.

56.     SRO Ptacek advised Galicano that because Galicano was engaged in suspicious activity that SRO Ptacek could demand Galicano's name.

57.     Galicano told SRO Ptacek that he did not have to give his name and that Galicano was not involved in suspicious activity.

58.     Officer Garcia, who may have been present earlier, was known to be present at the scene at this point, as Officer Garcia's voice can be heard on the body cam footage.  Officer Garcia did not initially activate his body cam.

59.     SRO Ptacek then told Galicano that he must give SRO Ptacek his name, tell SRO Ptacek why he was there and why he might be videotaping kids.  Again, what crime was allegedly committed or was in the process of being committed was never revealed to Galicano.

60.     Galicano did not provide SRO Ptacek with his name or any other information.

61.     Officer Garcia advised SRO Ptacek that Galicano refused to identify himself to Officer Garcia earlier.

62.     SRO Ptacek stated to Officer Garcia "He (Galicano) is going to identify himself to me or he is going to go to jail."

63.     SRO Ptacek again requested Galicano's name.  Galicano again refused.  At this point, SRO Ptacek told Galicano that was going to arrest Galicano for obstruction if Galicano did not give his name.

64.     Galicano placed a phone call to his wife and explained what was happening and where he was at.

65.     SRO Ptacek again demanded that Galicano provide his name and his date of birth or he was going to arrest Galicano.

66.     Galicano refused and SRO Ptacek and Officer Garcia arrested Galicano.

67.     Galicano was transported to jail, booked and issued a citation for interference with a law enforcement officer under the Garden City municipal code.

68.     The matter was eventually set for hearing on February 15, 2023.  At the hearing the Garden City Attorney advised the Court the City was going to dismiss the interference with a law enforcement ordinance violation.

69.     On February 28, 2024, a motion for dismissal was filed by the Garden City Attorney and the case was dismissed the same day.

*Notice that Galicano can refuse to provide his name*

70.     The United States Supreme Court handed down the decision *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855 (1983).

71.     In *Kolender*, the United States Supreme Court held that a California statute that mandated individuals who loiter or wander on the streets provide credible and reliable identification and to account for their presence when requested by police was unconstitutional.

72.     *Kolender,* after quoting *Terry*, held that "California cannot abridge this constitutional rule by making it a crime to refuse to answer police questions during a *Terry* encounter, any more than it could abridge the protections of the Fifth and Sixth Amendments by making it a crime to refuse to answer police questions once a suspect has been taken into custody."

73.     Defendants have had nearly three (3) decades to review *Kolender* and to understand that while they could stop Galicano and ask Galicano questions, Galicano could refuse to provide an answer, and that his refusal to answer questions from law enforcement was not an independent basis for an arrest.

## CLAIMS

## COUNT I – VIOLATION OF CIVIL RIGHTS – LACK OF PROBABLE CAUSE FOR ARREST

74.     Galicano incorporates paragraphs 1 – 73 of his Complaint as if set forth fully herein.

75.     Galicano has a constitutional right to refuse to answer questions during a *Terry* stop.

76.     At all times set forth herein, SRO Ptacek was acting as a Garden City police

9

officer, and as such, was acting under the color of state law.

77.     At all times set forth herein, Officer Garcia was acting as a Garden City police officer, and as such, was acting under the color of state law.

78.     Officer Garcia and SRO Ptacek violated Galicano's rights, first, when they made a second *Terry* stop, and second, when they subsequently arrested him for interference with a law enforcement officer under the Garden City municipal code for refusing to answer questions during a *Terry* stop.

79.     Galicano has been damaged by the violation of his civil rights.

WHEREFORE, Galicano prays that the Court render judgment for him and against Officer Garcia and SRO Ptacek, for compensatory damages, punitive damages, attorney's fees, costs sustained herein, and for such other and further relief as this Court deems just and equitable under the circumstance.

## COUNT II – VIOLATION OF CIVIL RIGHTS – FAILURE TO TRAIN

80.     Galicano incorporates paragraphs 1 – 79 of his Complaint as if set forth fully herein.

81.     City has a duty to train its police officers regarding *Terry* stops and the right of the citizenry to refuse to answer questions from the police department.

82.     Upon information and belief, the City failed to train its police officers with respect to *Terry* stops and the right of the citizenry to refuse to answer questions from the police department.

83.     The City's failure to train its police officers, specifically Officer Garcia and SRO Ptacek, is the cause of the violation of Galicano's constitutional rights.

84.     Galicano was damaged by the City's failure to train Officer Garcia and SRO

Ptacek.


        WHEREFORE, Galicano prays that the Court render judgment for him and against the

City for compensatory damages, attorney's fees, costs sustained herein, and for such other and

further relief as this Court deems just and equitable under the circumstance.


## DEMAND FOR A JURY TRIAL

85.     Galicano makes demand for a jury trial.




                                        /s/ Joseph T. Welsh
                                        Joseph T. Welsh #78138
                                        207 S. Inman St.
                                        P.O. Box 606
                                        Sublette, Kansas 67877
                                        (620) 510-5030 – Phone
                                        (620) 510-5029 - Fax
                                        joe@jtwelshlaw.com